**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT CINCINNATI**

KIMBERLY S.[1],                                         Case No. 1:25-cv-141
         Plaintiff,                                          Litkovitz, M.J.

vs.

COMMISSIONER OF                                    **ORDER**
SOCIAL SECURITY,
         Defendant.

Plaintiff Kimberly S. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for

judicial review of the final decision of the Commissioner of Social Security (Commissioner)

denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security

income (SSI).  This matter is before the Court on plaintiff's Statement of Errors (Doc. 11), the

Commissioner's response in opposition (Doc. 14), and plaintiff's reply memorandum (Doc. 15).

I.      **Procedural Background**

Plaintiff filed applications for DIB and SSI in September 2021, alleging an onset of

disability since November 17, 2020, due to injuries sustained from a car accident.  (Tr. 191-204;

*see also* Tr. 224).  Plaintiff was 48 years old as of her alleged disability onset date.  (Tr. 12-19).

She had at least a high school education (Tr. 234) and past relevant work as a busser and clean

up worker (Tr. 18, 69).  The applications were denied initially and upon reconsideration.

Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative

law judge (ALJ) Anne Shaughnessy on September 18, 2023.  (Tr. 59-71).  Plaintiff and a

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment, or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

vocational expert (VE) appeared by telephone and testified at the ALJ hearing.  (*Id.*).  On

January 30, 2024, the ALJ issued a decision concluding that plaintiff was not disabled.  (Tr. 7-

24).  This decision became the final decision of the Commissioner when the Appeals Council

denied review on February 3, 2025.  (Tr. 1-6.)

**II.      Analysis**

**A.  Legal Framework for Disability Determinations**

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A).

The impairment must render the claimant unable to engage in the work previously performed or

in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§

423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not
disabled.  If the claimant cannot make an adjustment to other work, the claimant
is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four

steps of the sequential evaluation process.  *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548

(6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

## B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

1.  [Plaintiff] meets the insured status requirements of the Social Security Act
    through March 31, 2022.

2.  [Plaintiff] has not engaged in substantial gainful activity since November 17,
    2020, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et
    seq.*).

3.  [Plaintiff] has the following severe impairments: lumbar compression
    fracture and degenerative disc disease of the lumbar spine (20 C.F.R. §§
    404.1520(c) and 416.920(c)).

4.  [Plaintiff] does not have an impairment or combination of impairments that
    meets or medically equals the severity of one of the listed impairments in 20
    C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d),
    404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except she cannot climb ladders, ropes or scaffolds.  She can frequently climb ramps and stairs and can occasionally stoop and crawl.  She should avoid exposure to dangerous machinery and unprotected heights.

6.  [Plaintiff] is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).[2]

7.  [Plaintiff] was born [in] . . . 1972 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.  [Plaintiff] subsequently changed age category to closely approaching advanced age (20 C.F.R. §§ 404.1563 and 416.963).

8.  [Plaintiff] has at least a high school education (20 C.F.R. §§ 404.1564 and 416.964).

9.  Transferability of job skills is not an issue in this case because [plaintiff]'s past relevant work is unskilled (20 C.F.R. §§ 404.1568 and 416.968).

10. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).[3]

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from November 17, 2020, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

(Tr. 12-19).

**C.  Judicial Standard of Review**

---

[2] Plaintiff's past relevant work was as a busser and clean up worker, both medium, unskilled positions.  (Tr. 17, 68).

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as cashier II (430,000 jobs in the national economy), housekeep/cleaner (178,000 jobs in the national economy), and price marker (134,000 jobs in the national economy).  (Tr. 18, 69).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 587 U.S. 97 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

Plaintiff alleges the ALJ's RFC determination is not supported by substantial evidence for two reasons: (1) the ALJ improperly evaluated plaintiff's subjective complaints pursuant to 20 C.F.R. § 404.1529; and (2) the ALJ failed to properly evaluate the opinion of Christine O'Dea, M.D., pursuant to 20 C.F.R. § 404.1520c.  (Doc. 11 at PageID 886-92).

The Commissioner counters that the ALJ properly evaluated the record as a whole, including plaintiff's testimony, treatment notes documenting the frequency of her symptoms and the normal examination findings of record, and the findings of the state agency physicians and psychologists.  (Doc. 14 at PageID 902-03).  The Commissioner asserts the ALJ did not ignore evidence documenting plaintiff's subjective symptoms, but instead properly considered that evidence along with the evidence of record and determined that her subjective complaints were not entirely consistent with the record.  (Doc. 14 at PageID 904-05).

**E.  Analysis**

1.  <u>Medical Treatment</u>

On April 11, 2021, plaintiff presented to the emergency department with complaints of lower back pain after helping her mother get into the car.  (Tr. 291).  An examination revealed midline and bilateral lumbar paraspinal muscle tenderness, and pain with lumbar flexion and extension.  (Tr. 293).  Lumbar spine x-rays showed an age-indeterminate mild L3 vertebral compression deformity with some concern for recent acuity, a mild L1 vertebral compression deformity that was age-indeterminate but more likely chronic, and degenerative disc disease most pronounced at L5-S1.  (Tr. 294).  Plaintiff was diagnosed with non-traumatic compression fracture of the L3 vertebra and placed in a back brace for comfort.  (Tr. 294-95).

On May 13, 2021, plaintiff presented to Bonnie Neyer, APRN, CNP with complaints of back pain aggravated by movement and prolonged standing. (Tr. 312). She had been wearing a back brace as recommended in the emergency department. (*Id.*). She described her pain as reaching a 12/10 in intensity at times and feeling as though her bones were rubbing. (*Id.*). Upon examination, Ms. Neyer noted lumbar midline and left-sided tenderness and decreased range of motion. (Tr. 314). She provided diagnoses of lumbar compression fracture, sequela and prescribed ibuprofen 800 mg three times daily, acetaminophen 500 mg, cyclobenzaprine 5 mg twice daily, and a Lidocaine 5% topical patch. (Tr. 311, 315).

A June 18, 2021 lumbar CT revealed degenerative spondylosis most pronounced at L5-S1 causing moderate to severe right foraminal stenosis and moderate left foraminal stenosis and chronic osteoporotic compression deformities and superimposed Schmorl's nodes involving the L1, L3 and L5 vertebral bodies. (Tr. 288). On August 13, 2021, plaintiff returned to Ms. Neyer for unrelated complaints, but it was noted that she was wearing a back brace. (Tr. 306).

On March 14, 2022, plaintiff presented to Phillip Swedberg, M.D. for a consultative examination with complaints of low back pain since a November 2020 car accident. (Tr. 345). Her reported that her pain was exacerbated by prolonged ambulation, standing, and weight bearing. *Id.* Dr. Swedberg observed that she wore a back brace. (Tr. 346). Lumbar spine x-rays showed a remote-appearing wedge compression deformity of the L3 vertebra and multilevel lumbar degenerative changes most pronounced at L3-4, L4-5, and L5-S1. (Tr. 348). Dr. Swedberg provided diagnoses of normal physical examination and low back pain without radiculopathy and opined that plaintiff appeared capable of performing at least a moderate

amount of sitting, ambulating, standing, bending, kneeling, pushing, pulling, and lifting/carrying heavy objects.  (Tr. 347).

On April 1, 2022, plaintiff presented to Ms. Neyer with reports that she had re-injured her back after lifting something heavy.  (Tr. 362).  She endorsed constant 10/10 pain between her shoulder blades that ached with sitting and worsened with movement.  *Id.*  Upon examination, Ms. Neyer recorded tenderness to palpation of the midline thoracic region.  (Tr. 364-65).  Plaintiff denied radiculopathy and exhibited no focal, motor, or sensory deficits.  (Tr. 365).  Ms. Neyer provided diagnoses of chronic midline low back pain, unspecified whether sciatica present, and acute midline thoracic back pain.  She prescribed a muscle rub medication and referred plaintiff to physical therapy.  (Tr. 366).

On May 6, 2022, plaintiff presented to Jacqueline Pfeil, P.T., for a physical therapy evaluation with complaints of lower back pain due to several compression fractures.  (Tr. 418-19).  Upon examination, Ms. Pfeil noted restricted lumbar range of motion in all planes, thoracic spine tenderness to palpation, positive straight leg raise testing on the right, 4-/5 muscle strength with bilateral hip extension, and 3+/5 muscle strength with bilateral hip abduction.  (Tr. 419).  She assessed plaintiff with pain, abnormal tone, abnormal movement patterns contributing to functional limitations, decreased ambulation/ability to use stairs, decreased sit/stand tolerance, decreased tolerance for activities of daily living/work demands, and decreased ability to reach, lift and carry.  (Tr. 420).

On May 9, 2022, plaintiff presented to Abigail Margaret Walbrook, CNP for an evaluation of lumbar pain.  (Tr. 521).  X-rays depicted remote compression deformities at L1 and

8

L3 and moderate degenerative disc disease at L5-S1.  (Tr. 423).  Ms. Walbrook recommended weaning the back brace.  (Tr. 521).

During physical therapy sessions on June 10 and July 14, 2022, Ms. Pfeil continued to note decreased lumbar range of motion in all planes, thoracic spine tenderness to palpation, positive straight leg raise testing on the right, and reduced muscle strength with bilateral hip extension and abduction.  (Tr. 388-89; 606).

On August 5, 2022, plaintiff presented to Abigail Margaret Komplin, CNP, with complaints of constant right low back pain with intermittent radiation to her right thigh.  (Tr. 611).  Plaintiff reported that physical therapy had helped some of her pain and that she was taking over-the-counter medication when needed.  On examination, she exhibited a normal gait, 5/5 strength in her bilateral lower extremities, negative straight leg raise testing, and normal sensation.  (Tr. 611).

An August 25, 2022 lumbar MRI revealed non-compressive multilevel lumbar degenerative disc disease most evident at L5-S1 with mild to moderate right L5 foraminal stenosis and unchanged remote L1 and L3 deformities.  (Tr. 664).  During a September 9, 2022 follow-up appointment, Ms. Komplin noted tenderness to palpation of the right paraspinal muscles.  (Tr. 613).  She exhibited a negative straight leg raise test and sensation to light touch was intact.  Plaintiff continued home therapy exercises and was taking over-the-counter medication as needed.

On December 1, 2022, plaintiff presented to Dr. O'Dea with complaints of low back pain. Dr. O'Dea diagnosed her with compression fracture of L1 vertebra with routine healing and

prescribed Tylenol 500 mg. (Tr. 493). A February 8, 2023 DEXA bone density scan revealed osteoporosis. (Tr. 680). In a May 25, 2023 Treating Source Statement, Dr. O'Dea, who has seen plaintiff on five occasions since October 6, 2022, listed a diagnosis of chronic low back pain and opined that she could occasionally lift/carry less than 10 pounds, sit 6 or more hours with breaks, and stand/walk 2 hours total in an 8-hour workday. (Tr. 824). She could frequently reach, handle, finger, and feel and occasionally push/pull with the upper and lower extremities. (*Id.*). Dr. O'Dea advised that a trial of physical therapy had been unhelpful. (Tr. 825). She noted that plaintiff had been referred to a pain clinic for injections but had not yet gone. (*Id.*).

   2.   RFC

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).[4] A claimant's RFC assessment must be based on all the relevant evidence in her case file. (*Id.*). The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)-(5). With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

---

[4] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Miller v. Comm'r of Soc. Sec.,* No. 3:18-cv-281, 2019 WL 4253867, at *1 n.1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007)). The Court's references to DIB regulations should be read to incorporate the corresponding and identical SSI regulations for purposes of this Order/Report and Recommendation.

The ALJ is charged with the final responsibility in determining a claimant's RFC. *See* 20 C.F.R. § 404.1546(c). The ALJ is responsible for assessing a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). The ALJ's decision "cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)). The plaintiff "bears the burden of demonstrating a RFC more restrictive than that determined by the ALJ." *Id.* (citing *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008)).

### 3. Symptom Severity Analysis

ALJs must "consider all of the evidence in an individual's record" and determine whether the individual is disabled by examining "all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record." SSR 16-3p, 2016 WL 1119029, at *2. ALJs also evaluate the "consistency" of a claimant's subjective description of symptoms with the record. *See Lipanye,* 802 F. App'x at 171, n.3 (6th Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)).

A two-step inquiry applies to symptom evaluation. The ALJ first determines if the record contains objective medical evidence of an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms. SSR 16-3p, 2016 WL 1119029, at *3; *see also* 20 C.F.R. § 404.1529(a); *Jones*, 336 F.3d at 475-76. Step two of

symptom evaluation shifts to the severity of a claimant's symptoms.  The ALJ must consider the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities.  *See* 20 C.F.R. §§ 404.1529(a) and (c); SSR16-3p, 2016 WL 1119029, at *4.  In making this determination, the ALJ will consider the following:

(i)  Your daily activities;

(ii)  The location, duration, frequency, and intensity of your pain or other symptoms;

(iii)  Precipitating and aggravating factors;

(iv)  The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v)  Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)  Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)  Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

An ALJ may not consider only objective medical evidence in determining disability unless this evidence alone supports a finding of disability.  SSR 16-3p, 2016 WL 1119029, at *5 ("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms."); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and

persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").  Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *9.  *See also Id.* at *7 (noting that the ALJ "will discuss the factors pertinent to the evidence of record").  At the same time, the ALJ is not required to cite or discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms with the record evidence.  *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) ("[T]he ALJ expressly stated that she had considered [the predecessor to SSR 16-3p], which details the factors to address in assessing credibility.  There is no indication that the ALJ failed to do so.  This claim therefore lacks merit. . . .").  Further, the ALJ's determination regarding the consistency of a claimant's subjective complaints with the record evidence is "to be accorded great weight and deference. . . ."  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Villarreal v. Sec'y of H.H.S.*, 818 F.2d 461, 463 (6th Cir. 1987)).

4. The ALJ's RFC and Symptom Severity Evaluation is Supported by Substantial Evidence

Plaintiff alleges the ALJ erred in her evaluation of plaintiff's physical symptoms by "fail[ing] to engage in any analysis to counter [] supportive evidence" including plaintiff's testimony regarding her pain and difficulties standing and sitting, plaintiff's testimony that her

13

medication can make her sleepy, and physical therapy discharge notes indicating plaintiff did not meet her goals of improving her pain and functional mobility. (Doc. 11 at PageID 888).

Plaintiff testified at the administrative hearing that the pain in her back is a "[n]agging pain [that] . . . just never seems to cease." (Tr. 65). She said physical therapy did help her pain some. *Id.* She testified that the pain is aggravated by doing chores or moving around too much. (Tr. 64). She testified that her pain affects her every day, limiting her to standing for about 10 to 15 minutes before she must sit down and sitting for about 30 to 35 minutes before she must get up. (Tr. 66). She testified that lidocaine patches provide some relief, but not total relief, which is why she takes acetaminophen and ibuprofen. *Id.* She further stated that acetaminophen used to make her drowsy, but it no longer makes her sleepy because she has gotten used to it. (Tr. 67-68).

The ALJ found plaintiff's subjective allegations of her symptoms were inconsistent with the record evidence:

> The claimant testified and elsewhere alleged disability as the result of physical impairments. At the hearing, the claimant testified that physical impairments, including chronic pain caused limitations in the ability to perform activities of daily living and caused her to not be able to fully function independently. The claimant alleged that a combination of physical impairments resulted in being fully disabled and unable to perform work activity.

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record *for the reasons explained in this decision*.

14

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because they are not supported by the objective evidence of record.

(Tr. 14-15) (emphasis added).

The ALJ reasonably determined that plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the evidence of record. (Tr. 14-15). Plaintiff argues the ALJ erred by not discussing plaintiff's testimony that her medications make her "sleepy" or "how the alleged side effects of her medication . . . could lead to off-task behavior." (Doc. 11 at PageID 888). However, plaintiff omits that the medication alleged to have made her sleepy was acetaminophen, which does not list drowsiness as a side effect,[5] and that she admitted during her hearing testimony that acetaminophen no longer makes her sleepy. (Tr. 67-68). Further, plaintiff has not pointed to any medical opinion evidence indicating that her medication side effects could cause her to be off task. *David R. v. Comm'r of Soc. Sec.,* No. 3:22-CV-88, 2022 WL 17362156, at *6 (S.D. Ohio Nov. 30, 2022) ("Plaintiff points to no medical opinions containing off-task or absence limitations.") (citing *Beckham v. Comm'r of Soc. Sec.*, No. 1:19-cv-576, 2020 WL 5035451, at *8 (S.D. Ohio Aug. 26, 2020) ("Plaintiff has not pointed to any medical opinion evidence indicating that plaintiff's seizures were so frequent that he would be off task for fifteen percent of the workday or absent from work two days per month.")).

Plaintiff contends the ALJ failed to consider the consistency of plaintiff's subjective symptoms with the physical therapy discharge notes, alleging that they support her reported pain

---

[5] *Acetaminophen,* MedlinePlus, National Library of Medicine, *https://medlineplus.gov/druginfo/meds/a681004.html*.

levels and document "frequent bouts of severe pain that was significantly limiting her ability to perform activities of daily living." (Doc. 11 at PageID 888). However, the ALJ discussed plaintiff's physical therapy findings noting that she "presented with decreased strength, decreased ROM, and pain" during her physical therapy evaluation on May 6, 2022. (Tr. 16). Further, the ALJ noted plaintiff's continued attendance of physical therapy sessions in May, June, and July 2022, and cited to the same discharge notes plaintiff references. (*Id.*, citing Tr. 562-606).

In addition to the physical therapy notes, the ALJ considered plaintiff's treatment with orthopedic nurse practitioner, Abigail Walbrook, CNP, her consultative examination with Phillip Swedberg, M.D., the opinion of Christine O'Dea, M.D., and the clinical and objective findings associated with these visits. The ALJ also noted that at plaintiff's orthopedic surgery evaluation on June 10, 2022, plaintiff reported physical therapy had improved her pain levels and that plaintiff was still taking over-the-counter medication as needed. (Tr. 16, citing Tr. 387). Plaintiff's gait was stable and she demonstrated 5/5 strength in the bilateral lower extremities. (*Id.*). The ALJ acknowledged that during an office visit on August 15, 2022, plaintiff reported continuing back pain with radiation to her right thigh and some tenderness, but an otherwise normal exam with a stable gait, 5/5 strength in bilateral lower extremities, and negative straight leg raise. (*Id.*, citing Tr. 611). Plaintiff was treated with over the counter medication and home exercises. (*Id.*).

The ALJ also considered the persuasiveness of the medical opinions in assessing plaintiff's symptom severity and the lack of significant physical examination findings to support

16

the extent of plaintiff's alleged limitations.  The ALJ observed that during plaintiff's consultative exam with Dr. Swedberg on March 24, 2022, plaintiff complained of lower back pain but denied radiation to the lower extremities, ambulated with a steady gait, was able to bend at the waist without difficulty, and had an otherwise normal physical exam.  (Tr. 15, citing Tr. 345).  The ALJ additionally noted normal exam findings during visits on May 6, 2022 (Tr. 16, citing Tr. 359) and May 9, 2022 (*Id.*, citing Tr. 417).  The ALJ likewise considered the opinion of Dr. O'Dea, but for the reasons set forth *infra* in Sections 5 and 6, reasonably determined it was unpersuasive.

The ALJ's conclusions about the location, duration, frequency, and intensity of plaintiff's alleged symptoms are adequately addressed and accommodated by an RFC for light work.  (Tr. 14).  In evaluating the intensity, persistence, or limiting effects of plaintiff's symptoms, the ALJ noted the history of conservative treatment with over the counter medication and lack of supporting clinical and objective medical findings in the record.  The ALJ here conducted a thorough evaluation of plaintiff's complaints of pain in light of the record as a whole.  Substantial evidence supports the ALJ's evaluation of plaintiff's subjective allegations and her conclusion that such allegations were not entirely consistent with the medical evidence of record.  *See* 20 C.F.R. § 404.1529(a).

5. <u>Medical Opinions</u>

ALJs must adhere to agency regulations governing the evaluation of medical opinion evidence.  Under the regulations applicable to plaintiff's claims, the Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical

opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[6] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2) (emphasis added). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ

---

[6] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

6. The ALJ properly considered Dr. O'Dea's opinion

Plaintiff argues that the ALJ's analysis of the consistency factor was flawed because the ALJ provided only three citations to support her finding that Dr. O'Dea's opinion was not consistent with the record. Plaintiff also argues that the ALJ ignored evidence that she alleges bolstered Dr. O'Dea's findings, including physical therapy discharge notes. (Doc. 11 at PageID 889-91).

Defendant argues that the three pieces of evidence cited by the ALJ to support her finding that Dr. O'Dea's opinion was unpersuasive explicitly support such a finding. (Tr. 17, citing 20 C.F.R. § 404.1520c(c)(2)). Defendant further argues that an ALJ's decision must be read as a whole. (Doc. 14 at PageID 902, citing *Chicora v. Comm'r of Soc. Sec.*, 852 F. App'x 968, 970 (6th Cir. 2021)). Defendant points to numerous other parts of the ALJ's decision that highlight medical records that are inconsistent with Dr. O'Dea's opinion. (*Id.* at PageID 902, referring to Tr. 15, citing Tr. 306, 367, 362, 417-18, 418).

In May 2023, Dr. O'Dea completed a Medical Source Statement, in which she opined that plaintiff could sit six hours or more in an eight-hour day (with breaks), stand/walk for two hours, and occasionally lift less than ten pounds. (Tr. 831). She could frequently reach, handle, finger, and feel and occasionally push/pull with the upper and lower extremities. (*Id.*).

The ALJ found Dr. O'Dea's opinion "unpersuasive," explaining:

19

> While this is a treating source for the claimant who would ordinarily be familiar with the claimant's clinical presentation, treatment history and vocational limitations, this opinion is not entirely supported because it is a simple checkbox and fill-in-the blank form, without much explanation or rationale for such an extreme opinion.  Moreover, the opinion is not entirely consistent with the objective evidence of record, which supports a reduced range of light work (3F; 7F/98, 151).

(Tr. 17, citing Tr. 347, 611, 663-64).

"Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [her] reasoning." *White v. Comm'r of Soc. Sec.*, No. 1:20-cv-588, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021).  As other courts have clarified:

> The new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01 (2017)).  An "ALJ's failure . . . to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [plaintiff's] disability determination was supported by substantial evidence." *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021).

*Hardy v. Comm'r of Soc. Sec.,* 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021); see also *Butcher v. Comm'r of Soc. Sec.*, No. 2:20-CV-6081, 2021 WL 6033683, at *4 (S.D. Ohio Dec. 21, 2021) (same quotation).

In this case, the ALJ met that minimum standard of articulation.  "While checklist opinions are not per se unreliable in this context, it is not improper for an ALJ to take into consideration the format of a medical opinion, especially in light of other factors in the record that signal unreliability." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 630 (6th Cir. 2016). An ALJ may properly discount a medical opinion where the questionnaire "fail[s] to provide any

explanation for [her] responses." *Id.* (citing *Price v. Comm'r of Soc. Sec. Admin.*, 342 F. App'x 172, 176 (6th Cir. 2009)). "Courts in the district routinely find that in the absence of explanatory support or reference to objective findings, such conclusory forms lack supportability." *Renee M. v. Comm'r of Soc. Sec.*, No. 3:23-cv-34, 2024 WL 1343582, at *3 (S.D. Ohio Mar. 29, 2024) (citing *Zachariah G. v. Comm'r of Soc. Sec.*, No. 2:21-cv-1600, 2022 WL 883769, at *9 (S.D. Ohio March 25, 2022), *report and recommendation adopted*, 2022 WL 2339444 (S.D. Ohio June 29, 2022) ("[B]ecause the statement was in the form of a checklist, without any additional comments or annotation, it lacked any supporting explanations or citations to relevant medical evidence, which are central to the supportability factor."); *Laney v. Comm'r of Soc. Sec.*, No. 5:21-cv-01290, 2022 WL 2176539, at *6 (N.D. Ohio June 16, 2022) ("Courts throughout the Sixth Circuit have concluded that check-box opinions are unsupported and a reason to discount a medical opinion.") (citing cases)). Further, as discussed above, the ALJ did not ignore the physical therapy evidence. (*See* Tr. 15-16).

The first piece of evidence the ALJ cites is the opinion of Phillip Swedberg, M.D., the consultative examiner, who examined plaintiff for disability purposes in March 2022 and found she had an "entirely normal" physical examination. (Tr. 347). He assessed that plaintiff was capable of performing at least a moderate amount of sitting, walking, standing, bending, kneeling, pushing, pulling, lifting, and carrying heavy objects and had no restriction in reaching, grasping, and handling objects. *Id.*

The ALJ next cites to a treatment note stating that physical therapy helped "some of" plaintiff's back pain and that she was continuing to do home exercises and was only taking over-

the-counter medication as needed.  On examination, plaintiff exhibited 5/5 strength in the bilateral lower extremities, negative straight leg raise, intact sensation, and tenderness to palpation of the right paraspinal muscles.  (Tr. 611).

Lastly, the ALJ cites to an MRI report from August 2022 showing non-compressive multilevel lumbar degenerative disc disease most evident at L5-S1 with mild to moderate right L5 foraminal stenosis and remote L1 and L3 compression deformities.  (Tr. 663-64).  While plaintiff's MRI does indicate foraminal stenosis at L5 on the right side with some intermittent radiation to her right thigh, the ALJ observed that she denied radiculopathy, numbness, or tingling.  (Tr. 16; *see* Tr. 292, 312, 355, 365, 387, 417, 566).

Plaintiff additionally argues in essence that the ALJ "interpret[ed] raw medical data in functional terms" when evaluating the MRI imaging and determining that it "supports a light RFC as opposed to a sedentary RFC."  (Doc. 11 at PageID 891).  Defendant argues in response that the ALJ did not interpret raw data, but rather she "discussed the interpretation of the radiologist of mild to moderate findings."  (Doc. 14 at PageID 901, n.2, citing Tr. 17, 663-64 and *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727 (6th Cir. 2013) (finding no improper interpretation of raw medical data where x-rays had already been interpreted by a radiologist and the ALJ's conclusions were consistent with that interpretation)).

It is well-settled that "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [the claimant's] residual functional capacity."  *Coldiron v. Comm'r of Soc. Sec.,* 391 F. App'x 435, 439 (6th Cir. 2010) (internal citations and quotations omitted) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629,

633 (6th Cir. 2004)). "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron*, 391 F. App'x at 439 (citing *Poe v. Comm'r of Soc. Sec.,* 342 F. App'x 149, 157 (6th Cir. 2009); *Dixon v. Massanari,* 270 F.3d 1171, 1177-78 (7th Cir. 2001)). *See also* 20 C.F.R. § 404.1546(c) (the ALJ is responsible for assessing a residual functional capacity).

In this case, the ALJ did not craft the RFC by interpreting raw medical data. Here, the only raw medical data—the MRI—had already been interpreted by a radiologist. *See Michael G. v. Comm'r of Soc. Sec.*, No 2:21-cv-5467, 2022 WL 11615881, at *8 (S.D. Ohio Oct. 20, 2022) ("The only raw medical data—the EMG—was read and interpreted by the doctor in his report."). This evidence did not require the ALJ to interpret raw medical data but rather to evaluate it for consistency with the Dr. O'Dea's opinion and the other record evidence.

The ALJ here reasonably found that Dr. O'Dea's opinion was not supported because she failed to provide supporting explanations for the extreme limitations she gave. The ALJ reasonably determined that Dr. O'Dea's opinion that plaintiff "could perform less than a full range of sedentary work" was "extreme" and unsupported by the "simple checkbox and fill-in-the-blank form." (Tr. 17). However, the ALJ did not "dismiss" Dr. O'Dea's opinion by relying solely on the check-box nature of the form. As the ALJ correctly noted in her decision, Dr. O'Dea's opinion did not contain adequate explanation or rationale for her findings and was inconsistent with the evidence of record. (*Id.*). Considering that Dr. O'Dea failed to provide any explanations for the opinions she expressed on the medical source statement and the ALJ's

discussion of record evidence that is inconsistent with the level of restrictions opined by Dr. O'Dea, the Court concludes the ALJ did not err in finding Dr. O'Dea's opinion unpersuasive.

Therefore, the Court finds that the ALJ's RFC determination is supported by substantial evidence.  Plaintiff's assignment of error relating to the RFC determination, symptom severity analysis, and consistency assessment of Dr. O'Dea's opinion is overruled.

## III.    Conclusion

Based on the foregoing, plaintiff's Statement of Errors (Doc. 11) is **OVERRULED,** and the Commissioner's non-disability finding is **AFFIRMED.  IT IS THEREFORE ORDERED** that judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date:    3/6/2026

Karen L. Litkovitz
United States Magistrate Judge